UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **Guadalupe Caballero,** | ) | |
| Plaintiff, | ) | 2:13-cv-00992 JWS |
| vs. | ) | ORDER AND OPINION |
| Eric H. Holder, Jr.,<br>United States Attorney General, | ) ) ) | [Re: Motion at Docket 44] |
| Defendant. | ) ) | |

## I.  MOTION PRESENTED

Defendant Eric H. Holder, Jr., United States Attorney General ("Defendant" or "Government"), filed a motion for summary judgment at docket 44. Defendant's statement of facts in support of the motion is at docket 45. Plaintiff Guadalupe Caballero ("Plaintiff" or "Caballero") filed a response at docket 48. Her response to Defendant's statement of facts is at docket 49, with supporting materials at dockets 50 and 51. Defendant's reply is at docket 52, and his reply to Plaintiff's additional facts is at docket 53. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

In September of 2007, Caballero pleaded guilty to Attempted Transportation of Marijuana for Sale and was given four years of supervised probation. Four years later

Caballero was arrested for a probation violation, and the Government initiated removal proceedings.

During removal proceedings, Caballero claimed U.S. citizenship through acquisition.  That is, while she was born in Mexico, she argued that she acquired U.S. citizenship through her father, Ramon Montoya, whom she asserted had acquired citizenship through his father, Roberto Montoya.  However, Caballero later indicated that she was unable to provide sufficient evidence to rebut the presumption of alienage. The immigration judge therefore found that Caballero was removable.

Caballero did not raise the issue of acquired citizenship in her unsuccessful appeal to the Board of Immigration Appeals ("BIA").  She also did not raise the issue of citizenship in her petition for review with the Court of Appeals.  The Court of Appeals, however, transferred the matter to this court for a de novo review of Caballero's citizenship claim pursuant to 8 U.S.C. § 1252 (b)(5)(B).  Under § 1252(b)(5)(B) this court must make a decision on the issue of citizenship as if this action had been brought as a declaratory judgment action.[1]

The parties conducted further discovery.  The Government subsequently filed the pending motion for summary judgment, arguing that there is no genuine issue of material fact concerning Caballero's paternal grandfather's residency in the United States and her father's physical presence in the United States which would allow her to assert acquired citizenship.

---

[1]Section 1252(b)(5)(B) provides as follows:

> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28 [Declaratory Judgment].

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[7] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the

---

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6] *Id.* at 323.

[7] *Id.* at 323-25.

[8] *Anderson,* 477 U.S. at 248-49.

non-movant.[9]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

### IV.  DISCUSSION

**A. Burden**

The Court of Appeals transferred Caballero's citizenship claim to this court pursuant to 8 U.S.C. § 1252(b)(5)(B) for a new hearing.[11]  Under §1252(b)(5)(B) the court is directed to make a decision on the citizenship claim "as if [it] had been brought in the district court under [the declaratory judgment statute]."  Thus, while Caballero is the respondent in the removal proceedings, in this action Caballero is effectively a plaintiff seeking a declaratory judgment as to her citizenship.  Accordingly, she has the burden of proving her citizenship by a preponderance of the evidence.[12]

Placing the initial burden on Caballero is in line with the burden-shifting framework governing the removal proceedings themselves.  When, as here, there is evidence or if it is undisputed that the petitioner was born in a foreign country, the petitioner must provide "substantial credible evidence in support of [her] citizenship claim."[13]  In the event the petitioner can meet this burden, the Government then bears

---

[9]*Id.* at 255.

[10]*Id.* at 248-49.

[11]Doc. 18-9.

[12]*Sanchez-Martinez v. INS,* 714 F.2d 72, 74 n.1 (9th Cir. 1983); *Yee Tung Gay v. Rusk*, 290 F.2d 630, 631 (9th Cir. 1962) (stating that plaintiffs seeking a judicial declaration of citizenship have the burden of establishing their citizenship by "fair preponderance of the evidence.").

[13]*Ayala-Villanueva v. Holder*, 572 F.3d 736, 737 n.3 (9th Cir. 2009).

1  the "ultimate burden of proving the respondent removable by clear and convincing
2  evidence."[14]

**B. Citizenship through Acquisition**

A person obtains citizenship through birth or naturalization.[15] A person born in the United States is automatically a citizen.[16] It is undisputed here that Caballero was not born in the United States and has not obtained citizenship through naturalization. She argues, however, that she obtained citizenship by birth based on acquisition. That is, she argues that she acquired citizenship through her father, Ramon Montoya, who in turn acquired it from Roberto Montoya, a citizen of the United States. Indeed, persons not born in the United States, such as Caballero and her father, may still acquire citizenship by birth pursuant to immigration statutes.[17] "The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth."[18] These statutes provide specific residency or presence requirements to transmit citizenship from a citizen parent to his or her foreign-born child. The Government argues that Caballero did not provide sufficient evidence to show that both Roberto and Ramon met the applicable requirements.

---

[14]*Id.*

[15]*Miller v. Albright*, 523 U.S. 420, 423 (1998).

[16]*Id.* at 423-24.

[17]*Id.* at 424 ("Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress.").

[18]*Scales v. INS*, 232 F.3d 1159, 1162-63 (9th Cir. 2000) (internal quotation marks omitted). It is undisputed that Caballero's mother was not a U.S. citizen at the time of her birth and that her paternal grandmother was not a U.S. citizen at the time of Caballero's father's birth.

**1. Ramon Montoya's citizenship through Roberto Montoya**

In order for Caballero to demonstrate that she acquired citizenship at birth from her father Ramon, she must first provide evidence that Ramon, who was also born in Mexico, acquired citizenship from Roberto under § 201(g) of the former Nationality Act (1940), which was the applicable statute in effect at the time of Ramon's birth on June 1, 1947. Former § 201(g) states that a person shall be a citizen of the United States at birth when that person is:

> born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had 10 years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of 16 years, the other being an alien: Provided, That, in order to retain such citizenship, the child must reside in the United States or its outlying possessions for a period or periods totaling 5 years between the ages of 13 and 21 years....[19]

Thus, to demonstrate her father Ramon acquired citizenship through her paternal grandfather Roberto, Caballero must establish by a preponderance of the evidence that Roberto was a United States citizen who resided in the United States for ten years before Ramon was born, that five of those ten years occurred after Roberto's sixteenth birthday, and that Ramon satisfies the retention requirement.

For purposes of this motion, the Government concedes that Roberto was a United States citizen based on his birth certificate, which indicates he was born in Arizona.[20] The retention requirement is not at issue here. Thus, the only question is whether Caballero provided enough evidence to establish that Roberto resided—that is,

---

[19]*Alcarez-Garcia v. Ashcroft*, 293 F.3d 1155, 1157 (9th Cir. 2002) (quoting Nationality Act of 1940 §201(g), 8 U.S.C. § 601(g) (1940)).

[20]Doc. 44 at p. 6 n.1.

had his principal dwelling place[21]—in the United States for ten years prior to Ramon's birth in 1947 and that five of those years were after 1936, Roberto's sixteenth birthday.

It is undisputed, based on the evidence provided, that Roberto was born in Douglas, Arizona, on September 17, 1920.[22] It is also undisputed that as of April 1926 Roberto was registered at a school in Sonora, Mexico, and that he was at that school in 1929.[23] It is undisputed that his son, Ramon, was born in Pilares, Mexico, in 1947[24] and that his parents had lived in Mexico at least some amount of time before he was born.[25] The family moved to Agua Prieta, Mexico, when Ramon was still young.[26] There is no other evidence of Roberto's residency until 1951, when there is a record of Roberto living in the United States.[27]

Drawing all inferences in favor of Caballero, the evidence suggests Roberto was in the United States from September of 1920 through April of 1926, about five and a half years. By 1926, however, Roberto was living in Mexico and was still there in 1929. He was in Mexico in 1947 as well, but Roberto's residency from 1929 through Ramon's birth in 1947, the relevant period of time, is unknown. While it is possible that Roberto could have at least intermittently resided in the United States during this time, the burden is on Caballero to present sufficient evidence from which the court could infer

---

[21] *Savorgnan v. United States*, 338 U.S. 491, 505 (1950) (noting that the term "residence" under the Nationality Act of 1940 means the principal dwelling place or general place of abode, without regard to intent).

[22] Doc. 45 at pp. 16-18; Doc. 49 at ¶ 1.

[23] Doc. 45 at pp. 16-18; Doc. 49 at ¶¶ 2-3.

[24] Doc. 45 at pp. 12-14; Doc. 49 at ¶ 4.

[25] Doc. 45 at p. 28.

[26] Doc. 45 at pp. 20, 23.

[27] An April 10, 2012 letter from the Social Security Administration indicates that no U.S. earning or employment records exist for Roberto until 1951. The letter can be considered, as it is a public record and thus an exception to the hearsay rule under Rule Evidence 803(8) of the Federal Rules of Evidence.

his residency in the United States. She speculates in her briefing that Roberto was a migrant worker and went back and forth between the United States and Mexico. Speculation will not suffice.[28] Moreover, her speculation is undermined by an April 10, 2012 letter from the Social Security Administration indicating that no United States earning or employment records exist for Roberto until 1951.[29] Thus, at most, Caballero's evidence suggests Roberto resided in the United States five and a half years before Ramon's birth, short of the necessary ten.

Caballero argues that the court can at least infer that Roberto lived in the United States his entire life based on his death certificate, which indicates that Roberto had been a resident of Arizona for "life."[30] The Government contends that this evidence is inadmissible, arguing that duration of residency is not required by statute to be included in a death certificate and that under Arizona law such extraneous information is not considered prima facie evidence. The court is not convinced that the statement of residency in the death certificate is inadmissible evidence. The Government does not set forth what the requirements for a death certificate were at the time of Roberto's death, nor does it discuss whether rules promulgated in accordance with the state statute require a statement regarding duration of residency in Arizona. However, the accuracy of the residency statement in the death certificate is in doubt, given that the other undisputed facts plainly contradict it. Caballero does not dispute that Roberto was registered at a school in Mexico in 1926, was in still there in 1929, that he lived with his wife in Mexico for at least some time prior to Ramon's birth in 1947, and that he lived with the family in Mexico when Ramon was young.[31] She cannot dispute the fact

---

[28]*See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

[29]Doc. 45 at p. 81.

[30]Doc. 45 at p. 18.

[31]Doc. 45 at p. 23.

that he spent some of his life in Mexico and did not live in Arizona his entire life. Thus, there is not enough evidence on the record for a fact-finder to reasonably conclude by a preponderance of the evidence that Roberto satisfied the residency requirement established by the relevant Nationality Act.

**2. Caballero's citizenship through Ramon Montoya**

Even if the death certificate is sufficient evidence to meet her burden to show Roberto's requisite residency in the United States, Caballero must still be able to show by a preponderance of the evidence that she acquired citizenship from her father at the time of her birth pursuant to the applicable statute in effect at that time. Caballero was born in Mexico in 1966. The applicable statute at that time stated that a person born outside the United States with one parent who is a U.S. citizen is also a citizen if the parent was "physically present" in the United States for ten years prior to that child's birth, with five of those years occurring after the age of fourteen.[32] Thus, to demonstrate she acquired citizenship through her father, Caballero must show by preponderance of the evidence that Ramon was physically present in the United States by June of 1956— ten years prior to Caballero's June 23, 1966 birth. She must also show that five of those years occurred after Ramon's fourteenth birthday (which was June 1, 1961).

The Government asserts that Ramon did not enter the United States until 1957. Caballero disputes this fact, but there is nothing in the record to suggest that Ramon was in the United States prior to July 1957. The documentary evidence shows that Ramon arrived in the United States at Nogales, Arizona, on July 17, 1957, and that he became a lawful permanent resident on that date.[33] During his deposition, Ramon testified that he did not recall coming to the United States prior to that date and that he

---

[32]Immigration and Nationality Act of 1952 § 301(a)(7) (recodified without change to INA § 301(g) in 1978), 8 U.S.C. §1401(a)(7) (1952).

[33]Doc. 45 at p. 36; Doc. 50-1 at p. 37.

had no reason to believe he entered the United States before he became a lawful permanent resident.[34] He also testified that he enrolled in Sarah Marley Elementary School in Douglas, Arizona, the fall after he arrived in the United States.[35] Consistent with his testimony, the school records from Sarah Marley Elementary School indicate that Ramon was registered in the school system on September 3, 1957.[36] Thus, based on the undisputed evidence, Ramon was only present in the United States for nine years before Caballero was born, shy of the requisite ten years.

Caballero argues that there is evidence on the record from which the court could at least infer that Ramon came to the United States in 1956. She directs the court's attention to Ramon's testimony where he says that before entering first grade at Sarah Marley Elementary School, he attended a "special class" at the school. She argues that because his school records indicate he began first grade in 1957, "he must have arrived no later than 1956" to take the special class.[37] This is not a tenable inference based on the evidence. The school records specifically state that he entered the school system in the fall of 1957, not 1956. There is nothing to suggest that the records are incorrect. Indeed, Ramon does not challenge this enrollment date; he merely remembers having to take a special class for kids that did not speak English. The fact that Ramon took a special class before starting first grade does not require an inference that he arrived a full year ahead of what the documentary evidence shows, because there is nothing in the record about the duration of this "special class." Additionally, contrary to Caballero's argument, the first year of Ramon's enrollment was classified not just as first grade, but as grade "1 C." It is unclear whether "1 C" was a special class.

---

[34]Doc. 45 at pp. 22, 24.

[35]Doc. 45 at p. 67.

[36]Doc. 45 at p. 42.

[37]Doc. 48 at p. 11.

Therefore, the grade designation on the school records is not inconsistent with Ramon's memory.

There is no other evidence from which a person could reasonably conclude that Ramon arrived in the United States in 1956 rather than 1957. To support her argument that Ramon could have been in the United States in 1956, Caballero points to an inconsistency between his Immigrant Visa and Alien Registration card, which states that the family arrived on foot in 1957, and on Ramon's testimony, where he says the family arrived in his father's car in 1957. Based on this discrepancy, she argues that he could have crossed into the United States in a car before 1957. Such a theory is contrary to the evidence; Ramon testified that he arrived in 1957 and the documents related to his immigrant registration and his permanent residency state that he arrived in 1957. Caballero argues that Ramon's memory of the year of his arrival is simply based on the official documents and not on his own independent memory and that he could have actually arrived in 1956. Such a possibility is not enough to create a genuine issue of fact; Caballero must show some evidence of Ramon's presence in the United States in 1956. Moreover, even if Ramon does not have an independent memory of the exact date he crossed, he testified that he only crossed the border once and started school shortly thereafter. As discussed above, the documentary evidence supports that testimony—the immigration records state that he arrived in 1957 and the school records indicate he enrolled in school in the United States in 1957. Ramon's testimony does not contradict that enrollment date.

Caballero has not presented sufficient evidence to create a genuine issue of material fact as to her citizenship. Even assuming that she has enough evidence to support her burden as to her grandfather's residency based on his death certificate, there is nothing in the record which would allow a fact-finder to conclude by a preponderance of the evidence that Ramon was present in the United States in 1956.

## V.  CONCLUSION

Based on the preceding discussion, the Government's motion for summary judgment at docket 44 is **GRANTED**.  The Clerk of Court will please enter judgment for defendant Eric. H. Holder, Jr.

DATED this 5th day of May 2014.

                                          /S/
                              JOHN W. SEDWICK
                          UNITED STATES DISTRICT JUDGE